JOHN T. GORMAN
Federal Public Defender
District of Guam

KIM SAVO
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
DANNY PEREZ MANIBUSAN

FILED
DISTRICT COURT OF GUAM
JUL 18 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 05-000019 |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S POSITION RE |
| | ) | SENTENCING |
| vs. | ) | |
| | ) | |
| DANNY PEREZ MANIBUSAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, DANNY PEREZ MANIBUSAN, by and through counsel, Kim Savo, Assistant Federal Public Defender, respectfully requests that the court sentence him to time-served of 143 days to be followed by a two-year period of supervised release, including a mandatory condition requiring participation in an in-patient alcohol addiction treatment program of at least six months.

ORIGINAL

## I. INTRODUCTION

Before the court is a 44 year-old man, who is a life-long resident of Guam. He is one of seven children. Mr. Manibusan is unmarried. He has been living alone in a tin and wood structure on family property in the Chalan Pago area. The home has no running water, or electricity. Mr. Manibusan has been unemployed almost continuously since 1990.

Danny Manibusan suffers from severe alcohol addiction and its physical and psychological consequences. Mr. Manibusan has been drinking regularly and in large quantities since he was approximately sixteen years old. PSR at ¶60. He has been diagnosed with alcohol-related liver disease, and experiences mental disturbances resulting from alcohol abuse. PSR at ¶ 47, 52, 54, 58. He has been hospitalized on at least ten occasions for complications of alcoholism, including seizures, tremors, toxicity, and withdrawal. *Id.* On the day of his initial appearance in the instant case, his withdrawal symptoms were so severe he was hospitalized. PSR at ¶ 61.

Among the psychological effects resulting from alcoholism, Mr. Manibusan experiences some hallucinations and imagines that people are "after him." PSR at ¶ 47, 58. These uncontrolled thoughts also cause him to be angry. The combination of these delusions, lack of judgment while intoxicated, and anger have led repeatedly to Mr. Manibusan's problems with firearms.

Mr. Manibusan was arrested on April 8, 2003, after he shot a rifle into the air outside of his home. Shortly before he acquired the rifle that is the subject of this prosecution, Mr. Manibusan's home had been burglarized, as a result of which a car stereo and a generator had

2

been stolen from his home. On April 8, 2003, Mr. Manibusan returned home to find that a $700 bush cutter was stolen. At the time of his discovery, he had already been drinking. He took the gun, which he had purchased several days earlier, and shot it into the air to express his anger and frustration at the theft. PSR at ¶ 14. Each of Mr. Manibusan's prior convictions essentially result from similar conduct arising from the combination of intoxication and possession of firearms. PSR at ¶¶ 34-36. Mr. Manibusan's criminal conduct arises from the consequences of alcoholism.

Mr. Manibusan behaves very differently when he is not intoxicated. According to his father, Mr. Manibusan only becomes uncontrolled as a result of drinking. PSR at ¶ 49. After several months of sobriety while in custody, Mr. Manibusan himself feels different, and actually looks forward to remaining sober. PSR at ¶61.

Mr. Manibusan desperately needs intensive treatment for his alcoholism. At this point, for Mr. Manibusan, being an alcoholic is both a medical and psychological issue. The best deterrent and means of protecting the community is to assure that Mr. Manibusan has the necessary treatment and support to cease drinking. Incarceration alone will not –and has not in the past– fully address Mr. Manibusan's alcoholism.

Mr. Manibusan respectfully requests that the court impose a reasonable statutory sentence in light of his individual characteristics, the nature and circumstances of the instant offense, and the availability of community treatment to address his medical and psychological needs. Mr. Manibusan proposes a split sentence of six months incarceration with credit for time served to be followed by six months in a residential in-patient alcohol treatment program.

3

## II. DISCUSSION

The Supreme Court has ruled that the mandatory nature of the federal sentencing guidelines runs afoul of the Sixth Amendment. *United States v. Booker*, 125 S. Ct. 738 (2005). After *Booker*, the sentencing guidelines are "effectively advisory." *Id.* at 757. Courts are now required to consider the guidelines as only one among the other statutory purposes of sentencing in arriving at the appropriate sentence.[1] *Id.* The guidelines are neither the starting point of the court's considerations, nor are they to be weighed more heavily than the other statutory purposes. As the Ninth Circuit has stated the advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence . . . ." *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. 2005), *reh'g en banc*, 409 F.3d 1073. These "statutory purposes," including the guidelines, are enumerated at 18 U.S.C. §§ 3553(a), 3582(a), and 3661.

---

[1] "The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis., Jan. 19, 2005), *citing United States v. Wilson*, 350 F. Supp. 2d 910, 912 (D. Utah, Jan. 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. *See United States v. Issa M. Jaber*, 362 F. Supp. 2d 365, 371 (D. Mass, Mar. 16, 2005) ("*Wilson* method comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*"); *see also United States v. Myers*, 353 F. Supp. 2d 1026, 1028 (S.D. Iowa, Jan. 26, 2005) (Pratt, J.) (agreeing with *Ranum* approach and arguing that the *Wilson* approach is in error because it makes the guidelines, "in effect, still mandatory"); *United States v. West*, 2005 WL 180930 (S.D.N.Y. Jan 27, 2005) (following *Ranum*).

4

The overriding principle and basic mandate of Section 3353(a) requires district courts to impose a sentence "sufficient but not greater than necessary" to comply with the four purposes of sentencing: retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment), deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

In arriving at the appropriate sentence, section 3553(a) directs the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender,[2] (2) the kinds of sentences available, (3) the guidelines and policy statements issued by the Sentencing Commission, (4) the need to avoid unwarranted sentencing disparity, and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute nor *Booker* suggest that any single factor is to be given more weight than any other factor. There is no authority in the Ninth Circuit directing district courts to give more weight to the guidelines than to the other statutory factors.

Section 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G.

---

[2] Under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. *Id.*

5

§ 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment). In this case, Mr. Manibusan's treatment and medical needs are better served by a sentence which permits him to remain in the community provided that he remain in an alcohol treatment in-patient program for an extended period of time. By enacting section 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a).

Finally, section 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing and appropriate sentence." 18 U.S.C. § 3661. In sum, in every case, courts must now consider all of the statutory factors, not just the guidelines in arriving at the appropriate sentence.

### A. The Sentencing Factors Weigh in Favor of a Sentence That Incorporates Treatment for Alcoholism and Its Medical and Psychological Effects.

#### 1. The nature and circumstances of the offense and the history and characteristics of the offender

As documented in the presentence report, Mr. Manibusan has completely debilitated himself with alcoholism. He has been unemployed for a decade and living alone without power and water.

The circumstances of the offense arise from Mr. Manibusan's abuse of alcohol. Although it was clearly irresponsible for Mr. Manibusan to shoot a gun in the air in a residential area, his lack of judgment was a direct consequence of his intoxication. Mr. Manibusan's overall

6

mental health has become impaired from the severity of his alcoholism. Paranoid delusions and uncontrolled anger both appear to be consequences of an advanced stage of alcoholism.

Mr. Manibusan's criminal conduct cannot be understood outside the context of his alcoholism.

2.  **The kinds of sentences available**

Congress has explicitly recognized that incarceration is not an appropriate means of correction and rehabilitation. In this case, there is a viable alternative to incarceration that would directly promote Mr. Manibusan's rehabilitation. Without treatment for his alcoholism, Mr. Manibusan will almost certainly continue to pose the same danger to himself and others as he did prior to his arrest in this case.

As part of its sentencing authority, the court has the discretion to sentence Mr. Manibusan to a split sentence that imposes as a condition residential treatment for his alcoholism as well as mental health treatment. The intake counselor for the Salvation Army Lighthouse Recovery Center, the sole residential treatment facility on Guam, will be evaluating Mr. Manibusan sometime before July 21, 2005. Assuming that Mr. Manibusan is approved for the program, there is a waiting list until mid-August.

A custodial sentence of six months with credit for time served sanctions Mr. Manibusan for illegally possessing a firearm. The felon-in-possession statute is essentially a status offense. Six months incarceration thus provides a just punishment for this type of offense. This period of custodial time also serves the purpose of deterrence because Mr. Manibusan will have been completely detoxified by the end of the six month period. A split sentence that includes

residential alcohol treatment will accomplish what an uninterrupted 12 month custodial sentence cannot: treatment for the underlying cause of this and other offenses committed by Mr. Manibusan. Thus, a split sentence with credit for time served is more likely to accomplish the goals of sentencing than a straight custodial sentence.

By imposing a split sentence, the court retains the power to also impose a term of supervised release. The terms and conditions of supervised release preserve the court's ability to incarcerate Mr. Manibusan at a later date if he does not succeed in the treatment program or otherwise violates his conditions.

### 3. The need for treatment

Mr. Manibusan's medical records make clear that he is in desperate need of treatment for alcoholism. He has been hospitalized for complications of alcoholism on at least ten occasions. At the time of his initial appearance in this case his withdrawal symptoms were so severe he was again hospitalized. Mr. Manibusan's family reports that his problems derive from alcohol abuse. Previous evaluations by Department of Mental Health and Substance Abuse practitioners identified alcohol abuse as posing a danger to both Mr. Manibusan and the community at large. PSR at ¶ 54. In April 2004, Department of Mental Health records reflect that Mr. Manibusan was diagnosed with alcohol psychiatric disorder. PSR at ¶ 58.

In the past, Mr. Manibusan has been unsuccessful in out-patient treatment programs. He was afforded the opportunity to participate in a residential treatment program in 1992. He was discharged from that program because he consumed alcohol after having been permitted to leave the treatment residence.

Recognizing that he has been given opportunities in the past, Mr. Manibusan nevertheless respectfully asks this Court to give him a last chance to be treated for his illness. Mr. Manibusan fully understands that should the Court give him this opportunity there will be no further chances at a later date.

### III. CONCLUSION

Mr. Manibusan asks that, weighing all of the sentencing factors, the Court sentence him to a split sentence of six months incarceration with credit for time served to be followed by six months in a residential treatment program for alcoholism. Imposition of such a split sentence will be sufficient but not greater than necessary to achieve the statutory purposes of sentencing.

DATED: Mongmong, Guam, July 18, 2005.

_____
KIM SAVO
Attorney for Defendant
DANNY PEREZ MANIBUSAN

9

Case 1:05-cr-00019    Document 14    Filed 07/18/2005    Page 9 of 10

## CERTIFICATE OF SERVICE

I, RENATE A. DOEHL, hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on July 18, 2005:

RUSSELL C. STODDARD
First Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA


CARLEEN BORJA
U.S. Probation Officer
U.S. Probation Office
Districts of Guam and NMI
2nd Floor, U.S. District Court

DATED: Mongmong, Guam, July 18, 2005.

_____
RENATE DOEHL
Operations Administrator

KIM SAVO
Attorney for Defendant